# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GINA CALLAHAN,

        Plaintiff,

        v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 1:11-cv-501

Barrett, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff Gina Callahan filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims of error for this Court's review.  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

In November 2007, Plaintiff filed an application for Supplemental Security Income (SSI) alleging a disability onset date of January 1, 1994 due to both physical and mental impairments.  After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  On November 30, 2009, an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Tr. 24-60).  William Koty, an impartial vocational expert, also appeared and testified at the hearing.  On February 10, 2010, ALJ Larry Temin denied Plaintiff's application in a written decision.  (Tr. 11-19).

The record on which the ALJ's decision was based reflects that Plaintiff was 28 years old at the time of her application, and completed the 11th grade. (Tr. 18, 28). Plaintiff had no past relevant work (Tr. 18).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "affective disorder; learning disorder, not otherwise specified; and borderline intellectual functioning." (Tr. 13). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1, and Plaintiff does not specifically argue that the ALJ erred in that conclusion before this Court. (Tr. 14). The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations:

> She is able to perform only simple, routine, repetitive tasks. She is able to understand, remember, and carry out only short and simple instructions. She cannot interact with the general public, and she cannot interact with coworkers or supervisors more than occasionally. She cannot work at a rapid production-rate pace, or under a strict production quota. Her job should not require more than ordinary and routine changes in work setting or duties. She is able to make only simple work-related decisions.

(Tr. 15). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, Plaintiff is able to perform jobs that exist in significant numbers in the national economy, including such jobs as packer, cleaner, and warehouse worker. (Tr. 19). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. (Tr. 19).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff

argues that the ALJ erred by: (1) improperly weighing the opinion evidence; and (2) improperly assessing Plaintiff's credibility. Each assertion will be addressed in turn.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a

reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

## B. Relevant Evidence and ALJ Decision

### 1. *Medical records and opinion Evidence*

In November 2006, Plaintiff sought mental health services for anxiety and depression. (Tr. 305). She was diagnosed with a mood disorder, and assessed a Global Assessment of Functioning (GAF)[1] score of 48, indicating serious symptoms or limitations.

---

[1] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. The DSM-IV categorizes individuals with scores of 41-50 as having "serious" symptoms. *See* DSM-IV at 32.

(Tr. 312).

In December 2007, Plaintiff had a basic diagnostic evaluation from Butler Behavioral Health. (Tr. 343). The evaluation form indicates that Plaintiff had good rapport, appropriate appearance, adequate insight, and a calm and appropriate mood and affect. (Tr. 343). Shawnta Brent, a social worker, diagnosed Plaintiff with moderate depression, and assessed a GAF score of 50, indicating the borderline between serious and moderate symptoms and limitations. (Tr. 343-344).

In February 2008, Plaintiff had a consultative examination with psychologist Nancy Schmidtgoessling, Ph.D. at the request of the state agency. (Tr. 346). Dr. Schmidtgoessling indicated that Plaintiff "did not appear to be depressed or manic during the session. Her affect was appropriate . . . . She had adequate eye contact and energy level." (Tr. 348). Dr. Schmidtgoessling noted that Plaintiff was oriented, her memory for recent and remote events was only mildly impaired, and she did not experience any confusion. (Tr. 349). Plaintiff reported she did housecleaning, laundry, and shopping without difficulty, and also cooked and helped her husband manage money. (Tr. 349). Plaintiff stated that she "reads almost every day, and typically reads about three chapters before she starts to lose concentration." (Tr. 349). Plaintiff also reported that she attended church weekly, liked to take walks and play basketball, and was "good about attending appointments on time." (Tr. 350). She primarily spent her day watching her 2 and 4-year old daughters while her husband worked. (Tr. 350).

Dr. Schmidtgoessling concluded that Plaintiff was "able to understand one and two-step job instructions" but her ability to follow through on them was "probably moderately impaired." (Tr. 350). Dr. Schmidtgoessling concluded that Plaintiff's ability to maintain

attention to simple tasks was moderately impaired; her ability to relate to peers and authority figures in an age appropriate and socially appropriate fashion was mildly impaired overall; and her ability to withstand the stress and pressures associated with day to day work activity was "probably markedly impaired." (Tr. 351). Dr. Schmidtgoessling diagnosed a mood disorder and learning disorder, and assigned a GAF score of 51, indicating moderate symptoms and limitations. (Tr. 351).

On February 19, 2008, Dr. Tonnie Hoyle, Psy.D., reviewed Plaintiff's medical file at the request of the state agency. (Tr. 353-370). Dr. Hoyle determined that Plaintiff's impairments did not meet or medically equal any Listing. She also found that Plaintiff had moderate limitation in activities of daily living; mild limitation in social functioning; and moderate limitation in concentration, persistence, or pace. (Tr. 357, 367). Dr. Hoyle concluded that Plaintiff was "capable of simple routine tasks that she is motivated to perform, in a setting with regular expectations and few changes." (Tr. 356).

Dr. Catherine Flynn completed a separate review of Plaintiff's records in May 2008 and affirmed Dr. Hoyle's assessment (Tr. 376).

Thereafter, Ms. Brent, Plaintiff's social worker at Butler Behavioral Health Services, completed a mental status questionnaire wherein she indicated that Plaintiff was first seen in December 2007, and that she generally had good hygiene, normal speech, normal mood and affect, normal orientation, and that she did not show signs of anxiety. (Tr. 371). Ms. Brent further reported that Plaintiff had "good and positive insight," good judgment, average intelligence, "some trouble with short term memory," was capable of managing funds,"capable of following directions," able to concentrate without any problems, and "able to adapt fairly well." (Tr. 371-372). Ms. Brent further opined that she was "not sure if she

could handle pressures of work full time." (Tr. 372).

In December 2009, Dr. Tadepalli and Ms. Brent, co-authored a Mental Impairment Questionnaire relating to Plaintiff's functional limitations. (Tr. 433-38). They reported that Plaintiff had a range of symptoms including mood swings, low energy and decreased appetite. They further indicated that she was "unable to meet competitive standards" in eight out of 25 work categories. (Tr. 434-436). Dr. Tadepalli and Ms. Brent concluded Plaintiff was unable to do semiskilled or skilled work. They also indicated that she had no limitation sustaining an ordinary routine without special supervision, and that she had "limited but satisfactory" ability to maintain attention for two hour segments, remember work procedures, and maintain regular attendance. (Tr. 435). Dr. Tadepalli and Ms. Brent also found Plaintiff would not be precluded from understanding, remembering, and carrying out simple instructions, getting along with others, and responding appropriately to changes in a routine work setting. (Tr. 435). Dr. Tadepalli and Ms. Brent concluded that Plaintiff had moderate limitations in activities of daily living; moderate limitations in social functioning; moderate limitations in concentration, persistence, or pace; and no episodes of decompensation. (Tr. 436).

### 2. ALJ's Decision

After reviewing the medical evidence, the ALJ concluded that Plaintiff could perform a reduced range of work at all exertional levels with several nonexertional limitations due to her mental impairments, as outlined above. In making this determination, the ALJ assigned significant weight to the mental limitations found by Dr. Hoyle, the non-examining state agency consultant. (Tr. 17). The ALJ determined that Dr. Hoyle's assessment was consistent with the record as a whole. The ALJ also afforded significant weight to Dr.

Schmidtgossling's conclusions, with the exception of her determination that Plaintiff was markedly limited regarding work stress. In rejecting that conclusion, the ALJ found that such a conclusion was not supported by Dr. Schmidtgossling's examination findings or by other evidence of record. (Tr. 17-18).

The ALJ gave little weight to the mental status questionnaire completed by treating providers at Butler Behavioral Health Services in April 2008. The questionnaire was not incompatible with the ability to perform work activity, however, the ALJ found that the conclusions were not supported by treatment notes. The ALJ also gave little weight to the mental residual functional capacity provided by Dr. Tadepalli, because his conclusions were not supported by therapy notes and his progress notes were not consist with the limitations assessed therein. (Tr. 18).

### C.    Specific Errors

1. *Evaluation of Opinion Evidence*

Plaintiff argues first that the ALJ improperly credited the opinions of the non-examining state agency physician over the findings of Plaintiff's treating sources. Upon close inspection, the undersigned finds the ALJ's decision to be substantially supported in this regard.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must

still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug. 31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

As such, the opinions of treating and examining sources are generally entitled to more weight than opinions of consulting and non-examining sources. 20 C.F.R. § 404.1527(d); see *also West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 696 (6th Cir. 2007) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)) ("[R]eports from treating physicians generally are given more weight than reports from consulting physicians ...."). However, an ALJ need not credit a treating physician opinion that is conclusory and unsupported. *See Anderson v. Comm'r Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)) (holding that an ALJ need not credit a treating physician's

conclusory opinions that are inconsistent with other evidence).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)", opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, contrary to Plaintiff's assertions, the ALJ properly declined to give controlling weight to the opinions of her treating sources because they were unsupported and inconsistent with other record evidence. As noted by the ALJ, therapy notes from Plaintiff's treatment at Butler Behavior Health did not support the extreme opinion rendered by Dr. Tadepalli and Ms. Brent. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) (Treating physician opinions accorded great weight only when supported by sufficient clinical findings and consistent with the evidence). Notably, and as found by the ALJ, therapy notes indicate that Plaintiff's mood, affect, thought process, behavior and functioning was "unremarkable" at appointments at Butler Behavioral Health in February, March, April, May, July, September, October, and November 2008, as well as January, February, and June 2009. (Tr. 17, 378-380, 382-386, 390, 392-396). Further, as noted by the Commissioner, at the few appointments where Plaintiff's mood was considered "remarkable," it was merely noted that Plaintiff was depressed, and there was little in the progress notes that would support Ms. Brent's extreme limitations. (Tr. 381, 388, 389, 391).

As such, the ALJ properly gave little weight to their opinion.  *See Cutlip*, 25 F.3d at 287.[2]

With respect to Dr. Schmidtgossling, she concluded that "Plaintiff's ability to maintain attention to multi step repetitive tasks is probably markedly limited."  (Tr. 351).  Contrary to Plaintiff's contention, the ALJ properly afforded little weight to this finding.  Notably,  Dr. Schmidtgossing own exam findings do support her finding that Plaintiff could not handle work stress. (Tr. 17).  Dr. Schmidtgoessling found Plaintiff did not demonstrate any unusual motor behaviors nor signs of anxiety, her effort and persistence were good, her insight and judgment were "fairly good," her affect was appropriate, her energy level was adequate, and she "did not appear to be depressed or manic during the session."  (Tr. 16-17, 348-349).

Moreover, Dr. Schmidtgoessling concluded that Plaintiff was "able to understand one and two step job instructions."  This was consistent with the ALJ's RFC finding that limited Plaintiff to work involving only simple, work-related decision; only simple, routine, repetitive tasks; and only short and simple instructions. (Tr. 15).

Plaintiff asserts that all treating and examining sources have remarkably consistent diagnoses: a mood disorder and a GAF score around 50.  She further asserts that all treating and examining sources agree that Plaintiff has significant trouble controlling her anger appropriately, that she suffers from fatigue and poor sleep, a poor appetite, very poor concentration and memory, and a learning disability.  However, it is well established that a mere diagnosis or catalogue of symptoms does not indicate the functional limitations

---

[2] Additionally, Ms. Brent's findings, even if properly supported, were not entitled to controlling weight.  Social workers are not considered an acceptable medical source under the regulations. 20 C.F.R. § 416.913(a). As such, the ALJ was not permitted to assign "controlling" weight to her non-medical opinion. See Soc. Sec. Ruling 96 2p, 1996 WL 374188

caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment).

Furthermore, Plaintiff's reliance on GAF scores is not dispositive of the issue of disability. The undersigned recognizes that a GAF score can be helpful in assessing an individual's mental RFC. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 503 n. 7 (6th Cir.2006). At the same time, however, a GAF score is a physician's subjective evaluation and not raw medical data. *Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007). GAF scores do not have a direct correlation to the severity requirements in our mental disorders listings. Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 F.R. 50765 (Vol.162, August 21, 2000). The Commissioner explicitly denies endorsing use of the GAF scale in Social Security disability programs, and states that "[i]t does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed.Reg. 50,745, 50,764-765 (Aug. 21, 2000). In addition, a GAF score merely represents a "snapshot" of a person's "overall psychological functioning at or near the time of the evaluation. See *Martin v. Commissioner*, 61 Fed. Appx. 191, 194 n. 2 (6th Cir.2003). As such, a GAF assessment is isolated to a relatively brief period of time, rather than being significantly probative of a person's ability to perform mental work activities on a full-time basis. *Arnold v. Astrue*, 2:10-CV-013, 2010 WL 5812957 (S.D. Ohio Oct. 7, 2010) report and recommendation adopted, 2:10-CV-13, 2011 WL 597064 (S.D. Ohio Feb. 10, 2011).

Where, as here, there is a conflict in the medical evidence as to plaintiff's functioning, it is the ALJ's function to resolve such conflicts. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir.

1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990). Here, the ALJ was faced with conflicting evidence relating to Plaintiff's ability to perform gainful work activity. As outlined above, the ALJ's resolution of this conflict was done in accordance with agency regulations and controlling law and is supported by substantial evidence.

### 2. Credibility Determination

Plaintiff's next assignment of error asserts that the ALJ improperly evaluated Plaintiff's credibility. Specifically, Plaintiff alleges that the ALJ mischaracterized her testimony relating to her daily activities, selectively relied on certain statements she made relating to her medication, and improperly faulted Plaintiff for her poor work record. Each assertion will be addressed in turn.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commisioner of Social Sec.,* 486 F.3d 234, 247 (6th cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS*, 753 F.2d

517, 519 (6th Cir. 1985). In this regard, Social Security Ruling 96-7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96-7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002).

First, Plaintiff's assertion that the ALJ improperly found that her daily activities were inconsistent with the alleged severity of her impairments is not well-taken. As a matter of law, the ALJ may consider Plaintiff's household and social activities in evaluating her assertions of pain or limitations. *See Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 532 (6th Cir. 1997); *Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir.1990). *See also Heston v. Com'r*, 245 F.3d 528, 536 (6th Cir. 2001)(ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds). Here, in assessing Plaintiff's credibility, the ALJ noted that Plaintiff reported that she reads everyday, typically about 3 chapters before she loses concentration. She also watches television, dances, plays video games, plays cards, plays computer and puzzle games, and cares for her children.

The undersigned agrees with the Commissioner that Plaintiff's high level of functioning, including her abilities to be a stay-at-home mother for her young children, ages 4 and 6, as well as do other household chores, while still having time for puzzles, reading, TV, and playing video games, undercut her claims of disability. (Tr. 17, 130- 131, 142-145). *Meyer v. Comm'r of Soc. Sec.*, No. 1:09-cv-814, 2011 WL 1124698 at *11 (S.D. Ohio Feb. 11, 2011) (Litkovitz, MJ) ("As a matter of law, the ALJ may consider [the claimant's]

household and social activities in evaluating her assertions of pain or limitations").

Furthermore, Plaintiff's assertion that the ALJ mischaracterized her testimony lacks merit. Plaintiff argues that the ALJ asked Plaintiff what she "likes" to do most of the day, not what she actually does all day. However, Plaintiff reported that these were activities she did on a regular basis in forms she completed with her applications. (Tr. 130-131, 142-145). As noted above, a Plaintiff's daily activities are but one factor to be considered in evaluating a claimant's credibility. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p. Here, the ALJ properly considered this factor and his findings relating to Plaintiff's daily activities are substantially supported by the evidence of record and Plaintiff's testimony.

The ALJ also properly considered Plaintiff's statements relating to her medication. Notably, at the administrative hearing, Plaintiff appeared to be confused by questions relating to her current medication and/or unsure of how long she had been taking Zoloft. (Tr. 32-34). As a result, the ALJ left the record open for Plaintiff's attorney to submit, post-hearing, Plaintiff's medication print out to determine how long Plaintiff had been taking her medications. The information was not submitted. The ALJ reasonably considered these facts in his credibility assessment. As detailed above, "the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" is an other factor to be considered by the ALJ in assessing Plaintiff's credibility.

Last, the ALJ did not err in noting that Plaintiff "has a very poor work record" as such a finding is supported by the record. Plaintiff told Dr. Schmidtgoessling that she only worked one day in her whole life, but her work records show at least some work in five

different years. (Tr 17, 101, 346, 356).

Based on the foregoing, the undersigned finds that the ALJ's decision adequately sets forth the reasons for his credibility finding and shows he considered the required factors in determining plaintiffs credibility. *See* 20 C.F.R. § 416.929(c). In light of the ALJ's opportunity to observe plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. *See also Cruse v. Commissioner,* 502 F.3d 532, 542 (6th Cir. 2007); *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997); *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir.1987). Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

      *s/Stephanie K. Bowman*
      Stephanie K. Bowman
      United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

GINA CALLAHAN,                                    Case No. 1:11-cv-501

        Plaintiff,                                    Barrett, J.
                                             Bowman, M.J.

       v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).